# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TOLBERT MORRIS (#78084)**                                   **CIVIL ACTION**

**VERSUS**                                                                **NO. 19-22-JWD-EWD**

**DARRELL VANNOY, ET AL.**

### NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U. S. District Court.

In accordance with 28 U.S.C. § 636(b)(1), you have 14 days after being served with the attached report to file written objections to the proposed findings of fact, conclusions of law, and recommendations set forth therein.  Failure to file written objections to the proposed findings, conclusions and recommendations within 14 days after being served will bar you, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.

ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.

Signed in Baton Rouge, Louisiana, on March 4, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

## UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**TOLBERT MORRIS (#78084)**                                  **CIVIL ACTION**

**VERSUS**                                                   **NO. 19-22-JWD-EWD**

**DARRELL VANNOY, ET AL.**

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Before this Court is the application of Petitioner Tolbert Morris for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1]  It is recommended that Petitioner's application should be denied as the claims asserted are either procedurally defaulted or without merit. There is no need for oral argument or for an evidentiary hearing.

### I.    PROCEDURAL HISTORY

On November 15, 2010, Petitioner was indicted in the Twenty-Third Judicial District Court for the Parish of Ascension, State of Louisiana on one count of second degree murder, one count of aggravated rape, and one count of second degree kidnapping.[2]  After a jury trial in September of 2012, Petitioner was convicted as charged.[3] On October 9, 2012, Petitioner was sentenced to two life sentences plus thirty years imprisonment at hard labor, without the benefit of probation, parole, or suspension of sentence.[4]

Petitioner filed a direct appeal to the Louisiana First Circuit Court of Appeal ("First Circuit"). His conviction and sentence were affirmed by the First Circuit on December 4, 2013.[5] On June 13, 2014, the Louisiana Supreme Court denied Petitioner's petition for a writ of

---

[1] R. Doc. 1.
[2] R. Doc. 6-1, p. 82.  Petitioner was originally indicted for first degree murder, but the indictment was amended on 3/12/2012 to reflect a charge of second degree murder.
[3] R. Doc. 6-1, pp. 57-59.
[4] R. Doc. 6-1, pp. 60-62.
[5] *State v. Morris,* No. 2013-0456 (La. App. 1 Cir. 12/4/13), 2013 WL 6283953.

certiorari.[6] On or about May 5, 2015 Petitioner filed an application for post-conviction relief ("PCR application") with the trial court. The trial court summarily dismissed the application on May 21, 2015, in an Order that stated, "Denied. Not procedurally correct under Art. 926."[7] Petitioner sought review with the First Circuit,[8] which was denied on September 21, 2015.[9] The Louisiana Supreme Court, however, granted Petitioner's writ application on January 9, 2017:

> Writ granted. The district court's ruling summarily denying relator's post-conviction application is vacated, and the district court is directed to notify relator of any deficiencies in his application and afford relator the opportunity to correct them. *See generally State ex rel. Johnson v. Maggio*, 440 So.2d 1336, 1337 (La. 1983) (a pro-se petitioner "is not to be denied access to the courts for review of his case on the merits by the overzealous application of form and pleading requirements or hyper-technical interpretations of court rules.").[10]

On remand, the trial court issued an Order explaining to Petitioner that he neglected to include a properly notarized affidavit with his PCR application.[11] Twelve days after the Order was issued, on January 30, 2017, Petitioner provided the properly notarized affidavit.[12] On May 5, 2017 the trial court denied Petitioner's PCR application.[13] Petitioner sought review with the First Circuit,[14] which was denied summarily on September 18, 2017,[15] and then with the Louisiana Supreme Court, which was ultimately denied in a *per curiam* opinion on December 17, 2018.[16]

On or about January 8, 2019, Petitioner filed the instant application for a writ of habeas corpus, asserting the following claims for relief: (1) double jeopardy, (2) denial of the right to

---

[6] *State v. Morris*, No. 2014-0023 (La. 6/13/14), 140 So.3d 1187 (Mem).
[7] R. Doc. 6-5, pp. 53-54.
[8] R. Doc. 6-5, pp. 129-130.
[9] R. Doc. 6-5, p. 136
[10] *State ex rel. Morris v. State*, 2015-1824 (La. 1/9/17), 208 So. 3d 364.
[11] R. Doc. 6-5, p. 144.
[12] R. Doc. 6-5, p. 147.
[13] R. Doc. 6-6, pp. 2-3.
[14] R. Doc. 6-6, p. 28.
[15] R. Doc. 6-6, p. 35.
[16] R. Doc. 6-6, pp. 38-39.

testify, (3) failure to grant a mistrial due to prosecutorial misconduct, (4) erroneous jury charge, (5) denial of the right to fair trial when trial judge refused to allow counsel to argue mandatory sentencing to the jury, and (6) ineffective assistance of counsel.[17]

## II.    FACTUAL BACKGROUND

The facts, as accurately summarized in the decision of the First Circuit[18] are as follows:

> On March 6, 1990, at about 11:00 p.m., eighteen-year-old Tammy Bowers was outside of Lil' Pal's Grocery Store off of La. Highway 73 in Ascension Parish talking on the payphone to a friend, Steve Villar. Someone approached Ms. Bowers, abducted her, put her in a car, and drove away. With the phone left hanging off the hook, Mr. Villar heard Ms. Bowers scream. Mr. Villar drove to Lil' Pal's and saw Ms. Bowers' car there, with her purse and keys still in it. He also found Ms. Bowers glasses on the ground with both lenses out. Mr. Villar went to Ms. Bowers' trailer, which was right around the corner, and found a note written by her saying she was going to the store to call "Steve." Mr. Villar went back to Lil' Pal's and called 911. Deputy Quinn Leblanc, with the Ascension Parish Sheriff's Office, arrived at the scene shortly thereafter and found a half-open pocketknife on the ground and a black baseball cap near Ms. Bowers' car.
>
> Two days later, an LP & L (now Entergy) employee found Ms. Bowers' body on River Road. The autopsy and a rape kit revealed that she had been raped and beaten to death. Several pieces of evidence were found at the scene and collected, including a green shirt, a black T-shirt, and a piece of firewood (or log), thought to be the murder weapon. At the autopsy, evidence was collected, including the sweatpants and bra Ms. Bowers was wearing, urine and blood samples, hair found on her chest and left hand, a fiber found under her buttocks, nail clippings, and finger and palm prints. Some hair and fibers collected were sent to the FBI for testing. Dr. Emile Laga, forensic pathologist, performed Ms. Bowers' autopsy. He testified at trial that Ms. Bowers was stabbed in the neck

---

[17] Respondents have not raised timeliness as an affirmative defense. An independent review establishes that Petitioner's habeas application was timely. While his PCR application did not comply with Louisiana Code of Criminal Procedure Article 926 and was technically "improperly filed," Petitioner qualifies for either statutory tolling under 28 U.S.C. § 2244(d)(1)(B), or equitable tolling due to the Louisiana Supreme Court's conclusion that the trial court's initial dismissal of Petitioner's PCR application on a technicality without explanation and an opportunity to correct resulted in a denial of Petitioner's right of access to courts. *State ex rel. Morris v. State*, 2015-1824 (La. 1/9/17), 208 So. 3d 364.

[18] *State v. Morris,* 2013-0456 (La. App. 1 Cir. 12/4/13), 2013 WL 6283953.

and chest. No major arteries or organs were struck, so these wounds were not life threatening. Ms. Bowers also sustained blunt-force injury to her head, face and neck, and suffered a major skull fracture to the top of her head, which was the cause of death. Dr. Laga stated he found bark off of a "wooden block" inside that wound. The impact was so severe, the base of Ms. Bowers' skull was also fractured. There was massive bleeding inside the skull. Another blow to her face fractured her upper jaw on both sides. There was also a fracture on both sides of her lower jawbone. She also suffered a blunt injury to the upper spine, which fractured and dislocated her first and second vertebrae. The blow to the head also caused massive injury to her brain stem, which affects breathing, blood pressure, and heartbeat.

Time passed, no suspects were identified, and Ms. Bowers' case went cold. In 2002, Captain Mike Toney, with the Ascension Parish Sheriffs Office, resubmitted DNA evidence from Ms. Bowers' case to the crime lab. In 2006, the crime lab notified Captain Toney that it had a CODIS DNA hit for Herman Frazier. Mr. Frazier was arrested and charged with Ms. Bowers' kidnapping, rape, and murder. On the morning of his trial in 2010, Mr. Frazier pled guilty to manslaughter, second degree kidnapping, and forcible rape. He was sentenced to fifty years imprisonment at hard labor without benefits. As part of the plea agreement, Mr. Frazier identified Petitioner as an accomplice.

At trial, Mr. Frazier testified that on the night Ms. Bowers was abducted, he was riding with [Petitioner] in [Petitioner's] Plymouth Duster. They saw Ms. Bowers talking on the payphone outside of Lil' Pal's. [Petitioner] pulled into the parking lot behind her car. [Petitioner] got out of his car, approached Ms. Bowers and knocked her out. He put her in his car, and they drove about fifteen minutes to a gravel lane where [Petitioner] removed Ms. Bowers from the car and raped her. They returned to the car and drove to River Road. [Petitioner] removed Ms. Bowers from the car and again raped her. They then drove further down River Road, and [Petitioner] pulled into a driveway. [Petitioner], while holding a knife, told Mr. Frazier that he might as well take his turn. Mr. Frazier then raped Ms. Bowers. [Petitioner] then took Mr. [sic] Bowers by the hand and walked her down a dirt road. A while later, Mr. Frazier heard screaming. He walked to where Ms. Bowers and [Petitioner] were and saw them fighting. Ms. Bowers fell to the ground, and [Petitioner] picked up something and began hitting her with it. Mr. Frazier ran away without helping Ms. Bowers. Mr. Frazier testified he knew [Petitioner] from growing up around him and that he was a friend of the family.

4

[Petitioner] did not testify at trial.[19]

### III.  PROCEDURAL DEFAULT – CLAIMS 1-5

Respondents contend that Claims 1-5 are procedurally defaulted.[20] The trial court denied Petitioner's claims regarding double jeopardy (Claim 1), denial of the right to testify (Claim 2), erroneous jury charge (Claim 4), and denial of a fair trial because trial judge refused to allow counsel to argue mandatory sentencing to jury (Claim 5) as repetitive claims under Louisiana Code of Criminal Procedure Article 930.4(B), because Petitioner "had knowledge and inexcusably failed to raise [these claims] in the proceedings leading to conviction."[21] The trial court denied Petitioner's claim regarding failure to grant a mistrial due to prosecutorial misconduct (Claim 3) as a repetitive claim under Louisiana Code of Criminal Procedure Article 930.4(C) because Petitioner "had knowledge and inexcusably failed to pursue [this claim] on appeal."[22] However, when ruling on Petitioner's writ application, the Louisiana Supreme Court stated:

> Denied. Relator fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*. As to his remaining claims, relator fails to satisfy his burden of proof. La.C.Cr.P. art. 930.2.[23]

When a state court decision to deny post-conviction relief rests on a state procedural basis that is independent of the federal questions raised by the petitioner and is adequate to support the judgment, the federal court lacks jurisdiction to review the merits of the petitioner's federal claims.[24] The independent and adequate state ground doctrine "applies to bar federal habeas when a state court decline[s] to address a prisoner's federal claims because the prisoner ha[s] failed to

---

[19] *State v. Morris,* No. 2013-0456 (La. App. 1 Cir. 12/4/13), 2013 WL 6283953, at **1-2.
[20] R. Doc. 13, pp. 11-12.
[21] R. Doc. 6-6, pp. 2-3.
[22] *Id.*
[23] R. Doc. 6-6, p. 39.
[24] *Coleman v. Thompson,* 501 U.S. 722, 729 (1991); *Moore v. Roberts,* 83 F.3d 699, 701 (5th Cir. 1996).

meet a state procedural requirement."[25] However, for the independent and adequate state ground doctrine to apply, the state court adjudication of a habeas petitioner's claim must have been explicitly based on a state procedural rule.[26] While the trial court ruling denying Petitioner's PCR application was explicitly based on state procedural rules, the language of the Louisiana Supreme Court's ruling denying Petitioner's writ as to Claims 1-5 is ambiguous. The Louisiana Supreme Court denied Petitioner's writ on Claims 1-5 on the basis that he failed to satisfy his burden of proof under La. C. Cr. P. art. 930.2. The Fifth Circuit has explained that reliance on article 930.2 is not limited to procedural deficiencies.[27] Since it is not clear that the Louisiana Supreme Court based its denial of Claims 1-5 explicitly on a state procedural rule, this Report will address Petitioner's claims on the merits.

## IV.    STANDARD OF REVIEW

The standard of review in this Court is set forth in 28 U.S.C. § 2254(d). Pursuant to that statute, an application for a writ of habeas corpus shall not be granted with respect to any claim that a state court has adjudicated on the merits unless the adjudication has "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

---

[25] *Coleman,* 501 U.S. at 729–730.

[26] *Moore,* 83 F.3d at 702.

[27] *Woodfox v. Cain*, 609 F.3d 774, 796 (5th Cir. 2010) ("The Louisiana Supreme Court has cited article 930.2 in other cases when a petitioner failed to carry his burden on the merits of the case. *See State v. LeBlanc*, 937 So.2d 844, 844 (La.2006) (citing art. 930.2 after stating that petitioner failed to show he pleaded guilty involuntarily); *State v. Berry*, 430 So.2d 1005, 1013 (La.1983) (citing art. 930.2 because petitioner's claim that the jury was not furnished with a copy of aggravating and mitigating circumstances was "unsubstantiated and therefore without merit"). But the court has also cited that provision when a petitioner failed to meet his burden on some procedural point. *See State v. Russell*, 887 So.2d 462 (La.2004) (citing art. 930.2 because petitioner failed to carry his burden of proof that post-conviction application was timely filed)).

the State court proceeding." Relief is authorized if a state court has arrived at a conclusion contrary

to that reached by the Supreme Court on a question of law or if the state court has decided a case

differently than the Supreme Court on a set of materially indistinguishable facts.[28]  Relief is also

available if the state court has identified the correct legal principle but has unreasonably applied

that principle to the facts of the petitioner's case or has reached a decision based on an

unreasonable factual determination.[29]  Mere error by the state court or mere disagreement on the

part of this Court with the state court determination is not enough; the standard is one of objective

reasonableness.[30]  State court determinations of underlying factual issues are presumed to be

correct, and the petitioner has the burden to rebut that presumption with clear and convincing

evidence.[31]

## V.    SUBSTANTIVE REVIEW

### A.    Claim 1 – Double Jeopardy

In Claim 1 Petitioner contends that he was subject to double jeopardy because the three

crimes for which he was charged "arose from the same alleged criminal act and resulted in

adjudication under three different statutes."[32] This is not double jeopardy. A double jeopardy

violation occurs when the defendant is charged with an offense that requires the same elements,

and no more, as another charged offense.[33] Petitioner was charged under Louisiana law with

---

[28] *Williams v. Taylor*, 529 U.S. 362, 413 (2000).

[29] *See Montoya v. Johnson*, 226 F.3d 399, 404 (5th Cir. 2000).

[30] *Id.  See also Williams*, 529 U.S. at 409 ("[A] federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable").

[31] 28 U.S.C. § 2254(e)(1).

[32] R. Doc. 1, p. 11.

[33] *Blockburger v. United States*, 284 U.S. 299, 304 (1932), citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911) ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one , is whether each provision requires proof of a fact which the other does not.")

second degree murder,[34] aggravated rape,[35] and second-degree kidnapping.[36] Each offense has distinct elements and charging Petitioner with all three offenses is not double jeopardy. As double jeopardy is not a means of escaping culpability for multiple crimes just because the crimes were committed during the same transaction or occurrence, Petitioner's Claim 1 is without merit and should be dismissed.

## B.     Claim 2 - Denied Right to Testify

In Claim 2 Petitioner alleges that he was denied the right to testify, contending that his attorneys did not allow him to testify because of his criminal history.[37] When a defendant contends that trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel."[38] Because Claim 2 is duplicative of one of the bases

---

[34] Second degree murder is the killing of a human being: (1) When the offender has a specific intent to kill or to inflict great bodily harm; or (2) When the offender is engaged in the perpetration or attempted perpetration of aggravated or first degree rape, forcible or second degree rape, aggravated arson, aggravated burglary, aggravated kidnapping, second degree kidnapping, aggravated escape, armed robbery, drive-by shooting, first degree robbery, second degree robbery, simple robbery, cruelty to juveniles, second degree cruelty to juveniles, or terrorism, even though he has no intent to kill or to inflict great bodily harm. La. Stat. Ann. § 14:30.1 (in pertinent part).

[35] Aggravated rape is a rape committed upon a person sixty-five years of age or older or where the anal, oral, or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances: (1) When the victim resists the act to the utmost, but whose resistance is overcome by force. (2) When the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution. (3) When the victim is prevented from resisting the act because the offender is armed with a dangerous weapon. (4) When the victim is under the age of thirteen years. Lack of knowledge of the victim's age shall not be a defense. (5) When two or more offenders participated in the act. (6) When the victim is prevented from resisting the act because the victim suffers from a physical or mental infirmity preventing such resistance. La. Stat. Ann. § 14:42 (in pertinent part).

[36] Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is: (1) Used as a shield or hostage; (2) Used to facilitate the commission of a felony or the flight after an attempt to commit or the commission of a felony; (3) Physically injured or sexually abused; (4) Imprisoned or kidnapped for seventy-two or more hours, except as provided in R.S. 14:45(A)(4) or (5); or (5) Imprisoned or kidnapped when the offender is armed with a dangerous weapon or leads the victim to reasonably believe he is armed with a dangerous weapon.
B. For purposes of this Section, kidnapping is:(1) The forcible seizing and carrying of any person from one place to another; or (2) The enticing or persuading of any person to go from one place to another; or (3) The imprisoning or forcible secreting of any person. La. Stat. Ann. § 14:44.1 (in pertinent part).

[37] R. Doc. 1, p. 13-14.

[38] *United States v. Mullins*, 315 F.3d 449, 452 (5th Cir. 2002), citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).

for Petitioner's Claim 6, asserting ineffective assistance of counsel, the claim will be addressed in that context, below.

### C.    Claim 3 - Denied the Right to a Fair Trial when the Trial Court Failed to Grant a Mistrial due to Prosecutorial Misconduct

In Claim 3, Petitioner contends that the trial court should have granted a mistrial due to prosecutorial misconduct. The record reflects that in the presence of the jury an individual in the audience appeared to have a seizure and 911 was called.[39] Defense counsel requested a bench conference with the judge and complained that prosecutor consoled the victim's family in the presence of the jury.[40] The prosecutor was admonished by the judge to keep such conduct outside of the presence of the jury.[41] Defense counsel moved for a mistrial, arguing that Petitioner was prejudiced by the spectacle of the seizure.[42] The motion was denied.[43]

A claim of prosecutorial misconduct is actionable on federal habeas review only when the alleged misconduct so infected the trial with unfairness as to make the resulting conviction a denial of due process.[44] Due process is only violated when the alleged conduct deprived the petitioner of his right to a fair trial. A trial is fundamentally unfair if there is a reasonable probability the verdict might have been different had the trial been properly conducted.[45] Generally, habeas corpus relief is available for prosecutorial misconduct only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair.[46] The conduct must either

---

[39] R. Doc. 6-2, p. 5.
[40] R. Doc. 6-2, pp. 6-7.
[41] R. Doc. 6-2, p. 7.
[42] R. Doc. 6-2, p. 8.
[43] R. Doc. 6-2, p. 9.
[44] *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).
[45] *Styron v. Johnson,* 262 F.3d 438, 454 (5th Cir. 2001).
[46] *Darden*, 477 U.S. at 181.

be so persistent and pronounced, or the evidence so insubstantial that, but for the [conduct], no conviction would have occurred.[47]

The requisite showing is a difficult one and Petitioner falls short of demonstrating a violation which impinged on his constitutional right to a fundamentally fair trial. Petitioner complains about an isolated event unrelated to the presentation of evidence and has failed to demonstrate that he would not have been convicted but for the prosecutor's actions. Claim 3 is without merit and should be dismissed.

### D.    Claim 4 - Denied the Right to a Fair Trial Due to Erroneous Jury Charge

Next, Petitioner contends he was denied the right to a fair trial because the jury received an erroneous instruction with respect to the law of "principals." The record reflects that the jury received the following charge:

> Now, we'll talk about principals. All persons concerned in the commission of a crime are principals and are guilty of the crime charged if, whether present or absent, they directly commit the act constituting the crime, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime.[48]

Petitioner argues that the use of the phrase, "are guilty of the crime charged," impermissibly directed a verdict of guilty.

Improper jury instructions in state criminal trials do not generally form the basis for federal habeas relief.[49] In examining habeas claims of improper jury instructions, the "inquiry is not whether there was prejudice to the [petitioner], or whether state law was violated, but whether there was prejudice of constitutional magnitude."[50] The relevant inquiry is "whether the ailing

---

[47] *Kirkpatrick v. Blackburn,* 777 F.2d 272, 281 (5th Cir. 1985).
[48] R. Doc. 6-4, p. 9.
[49] *Estelle v. McGuire*, 502 U.S. 62 (1991) (stating that federal habeas courts do not grant relief solely on the basis that a jury charge was erroneous).
[50] *Sullivan v. Blackburn*, 804 F.2d 885, 887 (5th Cir. 1986).

instruction by itself so infected the entire trial that the resulting conviction violates due process."[51] Moreover, errors in jury instructions are subject to harmless-error analysis.[52] Thus, even if the instruction was erroneous, if the error is harmless, habeas corpus relief is not warranted.[53] A constitutional error is not harmless if it "had substantial and injurious effect or influence in determining the jury's verdict."[54]

The trial court's instruction to the jury on the elements of "principals" closely tracked the language of the applicable statute, La. R.S. §14:24:

> All persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals.

Contrary to Petitioner's assertion, the jury was not unconditionally instructed to find Petitioner to be a principal and guilty of the crime charged. The jury was properly instructed that they were to find that Petitioner was a principal (and, therefore, guilty of the crime charge) *if* all the statutory elements of the law of principals was met. Because there was no error in the jury instruction-- certainly not error of a constitutional magnitude--this claim should be dismissed.

E.    **Claim 5 - Denied Right to Fair Trial when Judge Refused to Allow Trial Counsel to Argue Mandatory Sentencing before the Jury**

In Claim 5 Petitioner contends that he did not receive a fair trial because the jury was not advised, through argument or by jury instruction, that he was facing a mandatory life sentence.

---

[51] *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).
[52] See *Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) ("harmless-error analysis applies to instructional errors so long as the error at issue does not categorically vitiat[e] *all* the jury's findings").
[53] *Brecht v. Abrahamson*, 507 U.S. 619, 623–24 (1993).
[54] *Id.* (internal quotation marks and citation omitted).

11

Defense counsel did, in fact, argue the mandatory life sentence to the jury during closing arguments:

> Now, ladies and gentlemen, Mr. Tolbert Morris, as you've been told by the state is facing a life sentence and that's why he is here. That's what he is here for, life sentences for these crimes. And the standard of proof here is beyond a reasonable doubt. Beyond a reasonable doubt. You have to give him the benefit of every reasonable doubt.[55]

Although the record reflects that there was no jury instruction on the possible penalties associated with the charges,[56] Petitioner has not established that this was an error of such constitutional magnitude that he received a fundamentally unfair trial. Indeed, Petitioner's counsel advised the jury during closing arguments that Petitioner was facing "life sentences."[57] Claim 5 is without merit and should be dismissed.

### F.    Claim 6 - Ineffective Assistance of Counsel

In Claim 6 Petitioner contends that he received ineffective assistance of counsel because his trial counsel failed to do the following: file a motion to quash the indictment on the grounds of double jeopardy, utilize an expert DNA witness at trial, allow Petitioner to testify as a witness in his own defense, move for a mistrial when the prosecutor engaged in prosecutorial misconduct, and object when the trial judge erroneously instructed the jury.  Petitioner also contends that his appellate counsel was ineffective because he failed to raise sufficiency of the evidence, ineffective assistance of trial counsel, and the claims presented in Petitioner's habeas application as errors on appeal.

---

[55] This section of the trial transcript was not part of the electronic record provided by Respondents. It is included in the certified record provided by the Twenty-Third Judicial District Court, Parish of Ascension, pages 543-544.

[56] This section of the trial transcript was not part of the electronic record provided by Respondents. It is included in the certified record provided by the Twenty-Third Judicial District Court, Parish of Ascension, pages 550-568.

[57] To the extent Petitioner contends his counsel was ineffective for failing to request a jury instruction, this claim also fails because Petitioner cannot demonstrate prejudice for the same reason.

Petitioner raised these issues in his PCR application, which the trial court dismissed, concluding:

> IT IS FURTHER ORDERED, that Petitioner's claim number 6 is hereby DENIED. Petitioner's application for Post-Conviction Relief acknowledges that petitioner has no evidence upon which to meet his burden that his trial and appellate counsel's performance was deficient and that he was prejudiced by the deficiency. The transcript of the proceedings, Petitioner's Application and exhibits do not support petitioner's claims of ineffective assistance, nor that petitioner will be able to meet his burden according to the two-prong test established in *Strickland v. Washington* or its progeny. The record clearly establishes that there is insufficient evidence upon which the petitioner can meet his burden that his attorneys' performance was deficient and that he was prejudiced by the alleged deficiency in counts one, two, three, and five. The record also clearly establishes that with regard to count four in his Claim Number 6, trial counsel, in fact, moved for a mistrial and it was denied. There is insufficient evidence with regard to petitioner's claim that his appellate counsel was ineffective. Petitioner's appellate counsel need not advance every argument, regardless of merit, urged by the defendant. Petitioner's claim does not establish that the appellate court would have granted relief had the issue been raised, accordingly, Petitioner's claim six is denied.[58]

To establish that his legal representation at trial fell short of the assistance guaranteed by the Sixth Amendment, a convicted defendant must meet the two-pronged test set forth by the Supreme Court in *Strickland v. Washington*.[59] The defendant must show that his counsel's performance was both deficient (that counsel did not provide reasonably effective assistance under prevailing professional norms) and prejudicial (that errors by counsel "actually had an adverse effect on the defense").[60] The former component of the test authorizes only "highly deferential" judicial scrutiny, requiring the defendant to overcome the presumption that, under the

---

[58] R. Doc. 6-6, pp. 2-3. The Louisiana Supreme Court also denied review of the trial court's decision as to Petitioner's ineffective assistance of counsel claim, holding: "Relator fails to show that he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)." R. Doc. 6-6, p. 39.

[59] 466 U.S. 668 (1984).

[60] *See Anderson v. Collins*, 18 F.3d 1208, 1215 (5th Cir. 1994), citing *Strickland*, 466 U.S. at 686-89, 693.

circumstances, the challenged action might be considered sound trial strategy.[61]  As to the latter component, it is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.  Rather, the defendant must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.[62]

A court considering a claim of ineffective assistance must apply a strong presumption that counsel's representation was within the wide range of reasonable professional assistance.[63]  The challenger's burden is to show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed by the Sixth Amendment.[64]

### 1. Trial Counsel

#### (a) Double Jeopardy

Petitioner contends that his trial counsel should have challenged the indictment on the grounds of double jeopardy. As discussed above in connection with Claim 1, Petitioner was not subjected to double jeopardy because he was charged simultaneously with second degree murder, aggravated rape, and aggravated kidnapping—offenses with different elements. Accordingly, trial counsel's performance was not deficient for failing to quash an indictment based on double jeopardy.

#### (b) Failure to Call a DNA Expert

Petitioner contends that trial counsel was also ineffective because DNA expert, Angela Ross, was hired to testify on behalf of the defense but was never called as a witness at trial. The

---

[61] *Id.,* citing *Strickland*, 466 U.S. at 689.
[62] *See Anderson*, 18 F.3d at 1215, citing *Strickland*, 466 U.S. at 693.
[63] *See Harrington v. Richter*, 562 U.S. 86, 104 (2011), citing *Strickland*, 466 U.S. at 689.
[64] *See Harrington*, 562 U.S. at 104, citing *Strickland*, 466 U.S. at 687.

trial record shows that the defense brought Ms. Ross to trial, but did not call her to testify.[65] It is unclear from the record why the defense chose not to call the expert to testify. The record demonstrates that Petitioner's counsel effectively cross-examined the prosecution's DNA experts, eliciting favorable testimony for the defense. On direct examination the prosecution's mitochondrial DNA expert, Romy Franco, testified that Tolbert Morris' mitochondrial DNA was consistent with one of the pubic hair combings found on the victim.[66] During cross-examination defense counsel elicited the following favorable testimony: mitochondrial DNA cannot uniquely identify someone,[67] mitochondrial DNA is not specific to a particular person,[68] every person in the same female lineage as well as some unrelated people have the same mitochondrial DNA,[69] two out of every 1,305 African Americans and one out of every 686 Hispanic people that have no relation to Tolbert Morris share the exact same mitochondrial DNA as Tolbert Morris,[70] it is statistically possible that hundreds of people in the area have the same mitochondrial DNA as Tolbert Morris.[71]

On direct examination the prosecution's YSTR DNA expert, Carolyn Booker, testified that the YSTR DNA profile from a blood stain taken from a t-shirt matched 16 of 17 markers of Petitioner's YSTR profile in one sample and matched 15 of 17 markers on a second sample.[72] On cross-examination, defense counsel elicited the following testimony from Booker: YSTR DNA is not individualized like an autosomal DNA profile,[73] every male in the same lineage and some

---

[65] R. Doc. 6-3, pp. 13-15; R. Doc. 6-4, p. 8.
[66] R. Doc. 6-3, p. 36.
[67] R. Doc. 6-3, p. 45.
[68] R. Doc. 6-3, pp. 43-44.
[69] R. Doc. 6-3, p. 44.
[70] R. Doc. 6-3, p. 45.
[71] R. Doc. 6-3, p. 61.
[72] R. Doc. 6-3, pp. 88-91.
[73] R. Doc. 6-3, pp. 96-97.

unrelated males share the same YSTR profile,[74] she could not with any certainty say that the DNA came from a male patrimonial family member of Mr. Tolbert,[75] one in 2,800 unrelated males have the same YSTR profile.[76]

Claims that counsel failed to call witnesses are not favored on federal habeas review because the presentation of witnesses is generally a matter of trial strategy and speculation about what witnesses would have said on the stand is too uncertain.[77] Thus, petitioners making claims of ineffective assistance based on the failure to call a witness must demonstrate prejudice by "nam[ing] the witness, demonstrat[ing] that the witness was available to testify and would have done so, set[ting] out the content of the witness's proposed testimony, and show[ing] that the testimony would have been favorable to a particular defense."[78] This requirement applies to both lay and expert uncalled witnesses.[79]

Petitioner offers only speculation that the expert could have helped the jury understand the DNA evidence. He offers no detail about what expert opinions would have been offered that would have been useful to his defense and how it would have changed the outcome of his trial. The record reflects that trial counsel hired an expert DNA witness and that trial counsel was well prepared to cross examine the prosecution's DNA experts. Under *Strickland*, the Court presumes that counsel's decision to forego calling the expert to testify was a sound strategy choice. Petitioner has failed to overcome that presumption.

Within this section of his brief, Petitioner also complains that his trial counsel failed to call "witnesses interviewed by police as possible suspects." Petitioner fails to identify these possible

---

[74] R. Doc. 6-3, pp. 96-97.
[75] R. Doc. 6-3, p. 111.
[76] *Id.*
[77] *See Woodfox,* 609 F.3d at 808.
[78] *Id.*, quoting *Day v. Quarterman,* 566 F.3d 527, 538 (5th Cir.2009).
[79] *Id.*

suspects, what testimony they would have offered at trial, and how the outcome of his trial would have been different had these witnesses been called to testify. Conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue and these claims should also be dismissed.[80]

Petitioner also complains that his counsel was unable to cross examine the prosecution's chief witness about a dispute that occurred between the witness and Petitioner's family. Again, this allegation is vague, contains no additional information, does not raise a constitutional issue of ineffective assistance of counsel and should be dismissed.[81]

### (c) Denial of Right to Testify

Next, Petitioner contends that his counsel was ineffective for interfering with his right to testify. Petitioner attests in the affidavit attached to his PCR application that his attorneys urged him not to testify due to his criminal history.[82] The trial court did not engage in any discussion with Petitioner on the record about his right to testify; however, the record reflects that trial counsel indicated a need to discuss whether Petitioner would testify before the defense rested its case.[83]

A defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense.[84] It is one of the rights "essential to due process of law in a fair adversary process."[85] The right to testify in one's own defense is protected by the Fifth Amendment's

---

[80] *See Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983).

[81] While unclear, it appears that Petitioner may be complaining that the trial court prohibited his trial counsel from questioning Herman Frazier about a rape allegation that did not result in a conviction. (R. Doc. 6-1, pp.149-151). Petitioner's allegation is meritless regardless of how it is construed. Federal habeas corpus relief may be granted on erroneous state evidentiary rulings only if the evidence at issue is "a crucial, critical, or highly significant factor in the context of the entire trial." *See Mullen v. Blackburn,* 808 F.2d 1143, 1143–1146 (5th Cir.1987). Petitioner has failed to show that the evidentiary ruling was erroneous. Furthermore, his conclusory and vague allegations fall short of a showing that the exclusion of this evidence was a crucial, critical or highly significant factor in his conviction.

[82] R. Doc. 6-5, p. 57.

[83] R. Doc. 6-4, pp. 5-8.

[84] *See Rock v. Arkansas*, 483 U.S. 44, 49 (1987).

[85] *See Rock*, 483 U.S. at 51.

privilege against self-incrimination, the Sixth Amendment's compulsory process clause, and the Fourteenth Amendment's due process clause.[86]  When a defendant contends that trial counsel interfered with his right to testify, "the appropriate vehicle for such claims is a claim of ineffective assistance of counsel."[87]

The record is silent on the extent of Petitioner's criminal background. However, according to Petitioner's affidavit, concern about his criminal history was the rationale behind his attorneys' recommendation that Petitioner not take the stand in his own defense.[88] As discussed above, the *Strickland* standard requires the Court to presume counsel's recommendation was a sound strategy choice. Considering Petitioner's failure to provide the Court with any detail on what his testimony would have been or how it would have changed the outcome of the trial, Petitioner has failed to overcome the presumption that his attorneys made a sound strategy choice.  Additionally, the language of Petitioner's affidavit suggests that his attorneys did not prevent him from testifying, but rather counseled him that he "should not testify" because of his past criminal history.[89] While counsel cannot override the ultimate decision of the defendant to testify,[90] that is not even what Petitioner alleges.[91] Petitioner has failed to show that his attorneys did not provide reasonably effective assistance under prevailing professional norms on this issue.

(d) Failing to Move for a Mistrial

Petitioner contends that he received ineffective assistance of counsel because his trial counsel "failed to move for a mistrial when an outburst by the victim's family member lead to

---

[86] *See Rock*, 483 U.S. at 51-53.
[87] *Mullins*, 315 F.3d at 452, citing *Sayre v. Anderson*, 238 F.3d 631, 634 (5th Cir. 2001).
[88] R. Doc. 6-5, p. 57.
[89] *Id.*
[90] *Mullins*, 315 F.3d at 453.
[91] Even if Petitioner had actually stated that trial counsel refused to allow him to testify, the Fifth Circuit has recognized that more than a bare-bones assertion of a right-to-testify violation is required.  *See United States v. Martinez*, 181 F.3d 627, 628-29 (5th Cir. 1999).

18

emotional consolation of the assistant district attorney by embracing the family before the jury."[92] As discussed above in connection with Claim 3, defense counsel moved for a mistrial, arguing that Petitioner was prejudiced by the spectacle of the seizure and the prosecutor's conduct in consoling the family, but the motion was denied.[93] Because the record does not support the allegation that his counsel failed to move for a mistrial and this claim should be dismissed.

      (e)  Erroneous Jury Charge

Next, Petitioner contends he received ineffective assistance of counsel because his trial counsel failed to object to an erroneous jury charge. As discussed above in connection with Claim 4, the jury was not improperly charged on the law of "principals." Because there was no error in the jury instruction, the failure to object to the instruction was not ineffective assistance of counsel and this claim should be dismissed.

## 2.  Appellate counsel

Finally, Petitioner contends that he received ineffective assistance because his appellate counsel failed to assert the following errors on appeal: sufficiency of the evidence, ineffective assistance of trial counsel,[94] and the five other errors asserted in his habeas application. Petitioner's contention that his appellate counsel failed to argue sufficiency of the evidence is not supported by the record and is completely without merit. In fact, sufficiency of the evidence was the sole argument on appeal and the sole focus of the First Circuit's opinion affirming Petitioner's conviction.[95]

Turning to the next alleged error, Petitioner asserts that his appellate counsel should have argued to the First Circuit that his trial counsel was ineffective for failing to object to "(a) gruesome

---

[92] R. Doc. 1, p. 21.
[93] R. Doc. 6-2, pp. 8-9.
[94] R. Doc. 1, p. 23,
[95] *State v. Morris,* 2013-0456 (La. App. 1 Cir. 12/4/13), 2013 WL 6283953.

display of photographs of victim and crime site, (b) hearsay, (c) relevance, (d) [and] lay proper foundation to play tape recording of Steve Villar."[96] In Louisiana, generally, claims of ineffective assistance of counsel are more properly brought in an application for post-conviction relief and not on appeal.[97] Petitioner was not prejudiced by his appellate counsel's failure to argue ineffective assistance of counsel at the appeal stage because Petitioner was able to assert this claim in his application for post-conviction relief.  In any event, Petitioner has failed to demonstrate that any sub-part of this argument would have been successful on appeal.

(a) "Gruesome Photographs"

Randall Ellis discovered the victim's body and testified at trial. During his testimony, the prosecution introduced photographs of the victim's body and where it was discovered by Mr. Ellis.[98]  Defense counsel did not object. Petitioner has failed to demonstrate that an objection would have been sustained, given the probative value of the photographs in the context of a murder trial. Furthermore, *Strickland* calls for a high deference to trial counsel's strategy choices. It is a legitimate strategy choice to avoid an objection that was unlikely to be sustained and would serve to highlight unfavorable evidence. Because Petitioner has failed to show that his appeal counsel would have been successful in advancing this argument, this claim fails.

(b) "Hearsay" & (c) "Relevance"

In (b) and (c) Petitioner contends that his appeal counsel should have argued to the First Circuit that he received ineffective assistance of counsel because his trial counsel failed to object to certain hearsay testimony and to the relevance of a certain photograph. A review of the record

---

[96] R. Doc. 1, p. 15.
[97] *See State v. Leger,* 05–0011, p. 44 (La.7/10/06), 936 So.2d 108, 142; *see also State v. Small,* 13–1334, p. 13 (La. App. 4 Cir. 8/27/14), 147 So.3d 1274, 1283.
[98] R. Doc. 6-2, pp. 11-14.

demonstrates that his trial counsel did object to the identified testimony and evidence,[99] and therefore this claim is without merit.

(d) "Lay Proper Foundation"

The prosecution called witness, Steve Villar, to testify at trial. Mr. Villar was on the phone with the victim at the time of her abduction. During Mr. Villar's testimony, the prosecution played a recording of the telephone conversation between the victim and Mr. Villar. The record reflects that the defense and prosecution stipulated to the authenticity of the tape in order to dispense with the formality of requiring the records custodian to appear at trial.[100] Had counsel not stipulated, the records custodian would have appeared at trial and the tape would have been entered into evidence. This was a strategy choice made by defense counsel in the interest of efficiency and as a courtesy to the court, counsel, and the records custodian. Petitioner has failed to demonstrate this argument would have been successful on appeal, and therefore, his appellate counsel was not ineffective for failing to advance it.

Petitioner lastly argues that his appellate counsel was ineffective for failing to argue the five issues he has raised in this habeas petition: (1) double jeopardy, (2) denial of right to testify, (3) failure to grant a mistrial, (4) erroneous jury charge, and (5) denial of the right to a fair trial when the trial judge refused to allow defense counsel to argue mandatory sentencing to the jury. All these claims are without merit for the reasons explained, above. As such, appellate counsel's failure to raise these arguments was not deficient, and Petitioner suffered no prejudice.

Because Petitioner cannot meet either prong of the *Strickland* standard as to his claims regarding ineffective assistance of trial or appellate counsel, the state courts' conclusion that

---

[99] Trial counsel objected to hearsay in the pages of the trial transcript referenced by Petitioner, "p. 89-90" (R. Doc. 6-2, pp. 18-19). Trial counsel also objected to the relevance of the testimony on the page of the trial transcript referenced by Petitioner, "p. 92" (R. Doc. 6-2, p. 21).
[100] R. Doc. 6-2, pp. 27-28.

Petitioner's ineffective assistance counsel claims are without merit is neither contrary to, nor an unreasonable application of, federal law.

## V.    CERTIFICATE OF APPEALABILITY

Should Petitioner pursue an appeal, a certificate of appealability should also be denied.  An appeal may not be taken to the court of appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."[101]    Although Petitioner has not yet filed a Notice of Appeal in this case, the Court may address whether he would be entitled to a certificate of appealability.[102]    A certificate of appealability may issue only if a habeas petitioner has made a substantial showing of the denial of a constitutional right.[103]  In cases where the Court has rejected a petitioner's constitutional claims on procedural grounds, a petitioner must demonstrate that "jurists of reason would find it debatable whether the petition states a valid claim of a denial of constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."[104]    In cases where the Court has rejected a petitioner's constitutional claims on substantive grounds, a petitioner must demonstrate that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."[105] In the instant case, reasonable jurists would not debate the denial of  Petitioner's application or the correctness of the procedural or substantive ruling.  Accordingly, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability should be denied.

---

[101] 28 U.S.C. § 2253(c)(1)(A).
[102] *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000).
[103] 28 U.S.C. § 2253(c)(2).
[104] *Ruiz v. Quarterman*, 460 F.3d 638, 642 (5th Cir. 2006).
[105] *Pippin v. Dretke*, 434 F.3d 782, 787 (5th Cir. 2005), quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).

## VI.    RECOMMENDATION

For the reasons set forth above, **IT IS RECOMMENDED** that Petitioner's application for habeas corpus relief be **DENIED** and that this proceeding be **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER RECOMMENDED** that, if Petitioner seeks to pursue an appeal in this case, a certificate of appealability be denied.

Signed in Baton Rouge, Louisiana, on March 4, 2022.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**